# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Espinosa, | No. CV-15-00324-TUC-CKJ (BGM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Loretta Lynch, Attorney General, United States Department of Justice; John and Jane Does 1–10; and ABC Governmental Entities 1–10, | |
| Defendants. | |

Currently pending before the Court is the Government's Motion to Dismiss First Amended Complaint (Doc. 21). Plaintiff filed his opposition (Doc. 22), and the Government replied (Doc. 23). As such, the motion is fully briefed and ripe for adjudication.

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure, this matter was referred to Magistrate Judge Macdonald for Report and Recommendation. On November 21, 2016, oral argument was held before the Honorable Bruce G. Macdonald. Minute Entry 11/21/2016 (Doc. 27). The matter is ripe for review. The Magistrate Judge recommends that the District Court grant the Government's motion to dismiss (Doc. 21).

## I.     FACTUAL BACKGROUND

On or about July 10, 2012, the Department of Homeland Security Office of Inspector General ("DHS OIG") Joint Intake Center received a referral from Customs and Border Protection Internal Affairs regarding Plaintiff.  First Amended Compl. ("FAC") (Doc. 18) at ¶ 10.  The referral was based on an allegation made by the United States Drug Enforcement Administration ("DEA"), Office of Professional Responsibility ("OPR"), which alleged possible corruption involving Plaintiff based on his alleged association with Sandra Campana.  *Id.* at ¶ 11.  Sandra Campana was alleged member of a narcotics trafficking organization under investigation by the DEA.  *Id.* at ¶ 12.  Plaintiff was a Lead Border Patrol Agent for the United States Border Patrol ("USBP") stationed at the Willcox Border Patrol Station in Willcox, Arizona.  *Id.* at ¶ 13.

On November 19, 2012, during a compelled DHS OIG interview, Plaintiff stated that he had been in an on-and-off relationship with Ms. Campana for three (3) years. FAC (Doc. 18) at ¶ 14.  Plaintiff was unaware of Ms. Campana's criminal associations and never attempted to conceal his relationship with her.  *Id.* at ¶ 15.  On November 22, 2012 DHS OIG requested a copy of Plaintiff's February 1, 2012, Electronic Questionnaire for Investigative Purposes ("e-QIP").  *Id.* at ¶ 16.  The e-QIP System is a computer-generated username and password protected system unique to government employees with security clearances, used to submit personal information for background investigations during pre-employment and periodic re-investigations required every five years.  *Id.* at ¶ 17.  Plaintiff stated that he did not have continuing contact with foreign nationals, because at the time he was not involved with Ms. Campana.  *Id.* at ¶ 20.  On

November 26, 2012, DHS OIG presented a case for prosecution against Plaintiff to the United States Attorney's Office ("USAO") for a violation of 18 U.S.C. § 1001. *Id.* at ¶ 21. The USAO declined prosecution. *Id.*

On December 10, 2012, United States Attorney for the District of Arizona John Leonardo sent a *Giglio* letter to the head of the Agency's Tucson Sector regarding Plaintiff. FAC (Doc. 18) at ¶ 22. The USAO notified the Agency that in light of Plaintiff's relationship with Ms. Campana, it would no longer be using Plaintiff "as a government witness in any criminal prosecution." *Id.* at ¶ 24. Plaintiff asserts that the USAO never gave him notice that it was considering a *Giglio* letter and never gave him an opportunity to respond to the allegations against him, or review the materials it relied upon. *Id.* at ¶ 26.

On April 24, 2013, the Agency presented Plaintiff with a letter proposing his removal from Federal service. FAC (Doc. 18) at ¶ 27. The only charge in the letter proposing removal was the "Inability to Perform the Full and Unrestricted Duties of a Border Patrol Agent," based solely on the USAO's *Giglio* letter. *Id.* at ¶ 28. Plaintiff sought disclosure of DHS OIG's investigation file in its entirety and disclosure of all witness interviews and internal memoranda regarding the DHS OIG investigation. *Id.* at ¶ 29. This request was denied. *Id.* at ¶ 30.

Plaintiff was transferred to the position of Mission Support Specialist, a non-law enforcement position. FAC (Doc. 18) at ¶ 33. Plaintiff alleges the sole reason for this demotion was the *Giglio* letter. *Id.* at ¶ 35. On February 18, 2016, Plaintiff Anthony Espinosa filed his First Amended Complaint ("FAC") (Doc. 18) against the Attorney

General of the United States, Loretta Lynch and the Department of Justice. *See* FAC (Doc. 18). Plaintiff alleges violation of his Due Process rights pursuant to the Fifth Amendment including 1) deprivation of a property interest in employment; 2) deprivation of liberty interest; and 3) deprivation of a property interest in loss of benefits. FAC (Doc. 18) ¶¶ 38–56.

## II. STANDARD OF REVIEW

A complaint is to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Rule 8(a), Fed. R. Civ. P. While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998) ("conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss.").

Dismissal is appropriate where a plaintiff has failed to "state a claim upon which relief can be granted." Rule 12(b)(6), Fed. R. Civ. P. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). Further, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citations omitted).

"When ruling on a motion to dismiss, [the Court must] accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)). "The court draws all reasonable inferences in favor of the plaintiff." *Id.* (citing *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008)). This Court is not required, however, to accept conclusory statements as a factual basis. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007); *Mann v. City of Tucson*, 782 F.2d 790, 793 (9th Cir. 1986) ("Although we must, in general, accept the facts alleged in the complaint as true, wholly vague and conclusory allegations are not sufficient to withstand a motion to dismiss.").

### III. ANALYSIS

The Government urges that Plaintiff does not possess a protected property or liberty interest, and as such cannot have a due process right regarding the same. *See* Govt.'s Mot. to Dismiss FAC (Doc. 21); Govt.'s Reply (Doc. 23). Plaintiff objects, arguing that he was entitled to notice and the opportunity to be heard prior to the decision to issue a *Giglio* letter. *See* Pl.'s Response (Doc. 22) at 4–6.

- 5 -

### A.   *Substantive Rights*

#### 1. Property Interests

Plaintiff asserts that he "has a property interest protected by the Due Process Clause of the Fifth and Fourteenth Amendments for the United States Constitution to be free to pursue his career as a Lead Border Patrol Agent with [United States Border Patrol]." FAC (Doc. 18) at ¶ 39.  Plaintiff further asserts that he had "a fundamental right to be heard at a meaningful time and in a meaningful manner before being deprived of this statutorily-created property interest under the Due Process Clause of the Fifth Amendment[,]" and that "Plaintiff's demotion to Mission Support Specialist, a non-law enforcement position, was a violation" of those rights.  *Id.* at ¶¶ 40–41.  Plaintiff also asserts "a property interest protected by the Due Process Clause of the Fifth Amendment of the United States Constitution to receive and continue to receive the compensation and benefits to which he would otherwise have been entitled, including his salary as a Lead Border Patrol Agent[,] . . . as well as the immediate retirement annuity provided to law enforcement agents[.]"  *Id.* at ¶ 51.  Plaintiff argues that "[t]he denial of [his] right to clear his name by challenging or disputing the underlying DHS OIG investigation or the USAO's decision to issue the *Giglio* letter deprived Plaintiff of these benefits in violation of his due process rights under the Fifth Amendment."  *Id.* at ¶ 54.

As an initial matter, the Government correctly states that "the USAO was not Plaintiff's employer," and as such, "his allegations concerning his demotion and any accompanying benefits are irrelevant, as the USAO was not involved in any such decisions and Plaintiff has received the full process to which he was entitled on those

claims." Def.'s MTD (Doc. 21) at 3. As such, any process that was due regarding the status of Plaintiff's employment should have come from his employer, not the USAO.

At oral argument, Plaintiff's counsel clarified his client's position that this case takes place in the space before the decision to issue a *Giglio* letter is made, and argued that the USAO has an obligation to notify an employee regarding the *possibility* of the issuance of a *Giglio* letter and give the employee an opportunity to be heard. "To have a property interest in a benefit, [however,] a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756, 125 S.Ct. 2796, 2803, 162 L.Ed.2d 658 (2005) (internal quotations and citations omitted). The Supreme Court of the United States has noted that its "cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Id.* (citations omitted). As discussed in Section III.B., *infra*, Plaintiff was not entitled to any due process protection prior to or surrounding the USAO's decision to issue a *Giglio* letter, as this decision was entirely within the USAO's discretion.

### 2. Liberty Interest

Plaintiff asserts that he possesses "a liberty interest protected by the Due Process Clause of the Fifth Amendment of the United States Constitution to be free from false charges made under color of law which involved or implied personal or professional dishonesty, immorality or malfeasance in office, or which adversely reflected on or damaged his career and future in his employment with [United States Border Patrol]."

- 7 -

FAC at ¶ 45.  Plaintiff further alleges that "[t]he denial of Plaintiff's right to clear his name by challenging or disputing the underlying DHS OIG investigation or the USAO's decision to issue the *Giglio* letter was a violation of Plaintiff's due process rights under the Fifth Amendment." *Id.* at ¶ 47.  Plaintiff charges that "Defendant abrogated this duty by allowing the United States Attorney's Office to issue *Giglio* letters without any process, and as such her actions directly caused the deprivation of Plaintiff's liberty interest." *Id.* at ¶ 49.

As noted, *supra*, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock, Colo.*, 545 U.S. at 756, 125 S.Ct. at 2803 (citations omitted).  Moreover, as discussed in Section III.B., *infra*, Plaintiff was not entitled to any due process protection prior to or surrounding the USAO's decision to issue a *Giglio* letter, as this decision was entirely within its discretion.

### 3. *Loudermill* Distinguished

Plaintiff's further contention that his right to testify is inextricably intertwined with his position as a Border Patrol Agent, such that due process must attach is similarly without merit.  Pl.'s Response (Doc. 22) at 3–5.  Plaintiff relies on *Cleveland Board of Education v. Loudermill*, 479 U.S. 432, 452 (1985), urging "that a deprivation of property must 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"  Pl.'s Response (Doc. 22) at 4.  This argument is rooted in Plaintiff's argument that his right to testify is so intertwined with his right to employment that it constitutes a property and/or liberty interest.  *See id.* at 4–6.

Due Process "requires 'some kind of hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Loudermill*, 470 U.S. at 542, 105 S.Ct. at 1493 (citing *Board of Regents v. Roth*, 408 U.S. at 569–70, 92 S.Ct. at 2705; *Perry v. Sindermann*, 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972)). It was undisputed that the *Loudermill* respondents had a property interest in their public employment. *Loudermill*, 470 U.S. at 538, 105 S.Ct. at 1491. As such, the Supreme Court held that before the loss of any property interest in respondents' public employment, due process required a pretermination opportunity to respond. *Id.* at 548–49, 105 S.Ct. at 1496.

"[T]he requirements of due process[, however,] do not apply unless [Plaintiff] can first show that [he] has a cognizable liberty or property interest[.]" *Dorfmont v. Brown*, 913 F.2d 1399, 1403 (9th Cir. 1990) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972)). "Where there is no right, no process is due under the Constitution." *Id.* (citations omitted). "Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source[.]" *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

Consistent with these principles, the Ninth Circuit Court of Appeals in *Dorfmont* recognized that there is no entitlement to a security clearance, and "no right to maintain a security clearance and no entitlement to continued employment at a job that requires a security clearance." *Dorfmont*, 913 F.2d at 1404. The court noted that Ms. Dorfmont "ha[d] not been deprived of the right to earn a living[,] she ha[d] only been denied the

- 9 -

ability to pursue employment requiring a Defense Department security clearance." *Id.* at 1403. Without a "protected interest in a security clearance, there is no liberty interest in employment requiring such clearance." *Id.* As such, Ms. Dorfmont could "not establish[] a cognizable liberty or property interest and therefore [was] not entitled to constitutional due process protection." *Id.*

Plaintiff asserts that his case is distinguishable from *Dorfmont*, because she was a private employee seeking a security clearance, whereas he is a public employee which in and of itself is a protected property right. Pl.'s Response (Doc. 22) at 6–7. Plaintiff further argues that Ms. Dorfmont "was given a meaningful opportunity to respond to the allegations that led to the revocation of her security clearance." *Id.* at 6. Prior to removal from his position as a Lead Border Patrol Agent, Plaintiff submitted a written response to the proposed removal and participated in an oral reply. FAC (Doc. 18) at ¶ 34. This was the process due him pursuant to *Loudermill*. Despite Plaintiff's assertion to the contrary, there is no constitutional right to testify, nor is such a right inextricably intertwined with his position as a Border Patrol Agent. Accordingly, Plaintiff cannot "establish[] a cognizable liberty or property interest and therefore is not entitled to constitutional due process protection." *Dorfmont*, 913 F.2d at 1404.

### B.     *Prosecutorial Discretion*

#### 1.  Absolute Immunity

It is well established law "that a prosecutor has absolute immunity for the decision to prosecute[.]" *Roe v. City and County of San Francisco*, 109 F.3d 578, 583 (9th Cir. 1997) (citing *Burns v. Reed*, 500 U.S. 478, 486, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547

(1991); *Fletcher v. Kalina*, 93 F.3d 653, 654 (9th Cir. 1996)).  The Ninth Circuit Court of Appeals has further held that prosecutors are entitled to absolute immunity for the decision not to prosecute.  *Id.* at 583.  In *Roe*, a California Police Officer brought suit pursuant to § 1983 because the District Attorney refused to file cases in which Officer Roe was the arresting officer without corroborating evidence.  *Id.* at 582.  The *Roe* court observed that "[j]ust as a prosecutor's professional evaluation of the evidence assembled by the police is entitled to absolute immunity, . . . a prosecutor's professional evaluation of a witness is entitled to absolute immunity even if that judgment is harsh, unfair or clouded by personal animus[.]"  *Id.* at 584 (internal citations omitted); *see also Botello v. Gammick*, 413 F.3d 971, 976 (9th Cir. 2005).  "Whether [the prosecutor's] assessment is accurate or not is immaterial.  This kind of witness evaluation falls entirely within a prosecutor's judicial function regardless of whether one case or a line of cases is at issue."  *Roe*, 109 F.3d at 584.  Accordingly, a prosecutor's "decision not to prosecute [Plaintiff's] cases and their communication of that decision is intimately tied to the judicial process and is thus entitled to absolute immunity."  *Botello*, 413 F.3d at 977.

Here, Plaintiff seeks relief for the USAO's failure to include him in the decision-making process to issue a *Giglio* letter.  "The decision to place [Plaintiff] on the *Brady* list and to communicate that decision, however, were acts for which the[] Defendant[] ha[s] absolute immunity."  *Walters v. County of Maricopa, Ariz.*, 2006 WL 2456173, *9 (D. Ariz. 2006).  "[H]ere we face an individualized judgment regarding whether the presence of a particular [Border Patrol Agent] as investigating officer or otherwise as a witness would burden or compromise the prosecution's cases.  The judgment may be

- 11 -

wrongheaded, but it is the prosecutor's to make free from damage actions or injunctive oversight in the federal court." *Harrington v. Almy*, 977 F.2d 37, 42 (1st Cir. 1992). Accordingly, Plaintiff has failed to state a claim for relief.

### 2. Separation of Powers

"Prosecutorial charging . . . decisions are particularly ill-suited for broad judicial oversight." *United States v. Redondo-Lemos*, 955 F.2d 1296, 1299 9th Cir. 1992). Moreover, the separation of powers doctrine demands judicial respect for the independence of the prosecutor. *See United States v. Sears, Roebuck & Co., Inc.*, 719 F.2d 1386, 1391 (9th Cir. 1983); *see also Roe*, 109 F.3d at 586 ("[A]s a general principle, 'the separation of powers proscribes a judicial direction that a prosecutor commence a particular prosecution.'" (quoting *Harrington*, 977 F.2d at 41)). "It would raise serious separation of powers questions . . . for the district court to inquire into and supervise the inner workings of the United States Attorney's Office." *Redondo-Lemos*, 955 F.2d at 1299 (citations omitted). "The Office of the United States Attorney cannot function as prosecutor before the court while also serving under its general supervision." *Id.* at 1300.

The separation of powers doctrine dictates that the USAO's charging decisions are wholly within its discretion. Although this Court may arguably review a constitutional challenge to actions taken by the USAO, Plaintiff has not demonstrated a cognizable property or liberty interest in the right to testify which would thereby entitle him to due process. *See Redondo-Lemos*, 955 F.2d at 1300; *Dorfmont*, 913 F.2d at 1405 (concurrence). Accordingly, the Court finds that judicial review of the USAO's decision-making process to issue a *Giglio* letter is inappropriate in this case.

### C. *Leave to Amend*

The Government seeks dismissal of Plaintiff's FAC without leave to amend. Def.'s Mot. to Dismiss FAC (Doc. 21). "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (citations omitted). Here, the Plaintiff has already amended his Complaint once, and the Court finds that there is no set of facts that could cure the deficiencies found in Plaintiff's First Amended Complaint.

## IV. CONCLUSION

Based upon the foregoing, the Court finds that Plaintiff has failed to demonstrate a constitutional property and/or liberty interest entitling him to due process protection. Furthermore, the USAO's decision to send Plaintiff a *Giglio* letter is intimately tied to the judicial process, and as such, prosecutors are absolutely immune from suit. *See Botello*, 413 F.3d at 977.

## V. RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order GRANTING the Government's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 18) without leave to amend.

Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after

being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **CV-15-0324-TUC-CKJ**.

Dated this 20th day of January, 2017.

Honorable Bruce G. Macdonald
United States Magistrate Judge