IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Espinosa, | No. CV-15-00324-TUC-FRZ (BGM) |
| Plaintiff, | **ORDER** |
| v. | |
| Loretta Lynch, et al., | |
| Defendants. | |

Pending before the Court is: (1) Defendant's Motion to Dismiss; (2) the Magistrate Judge's Report & Recommendation regarding Defendant's fully briefed motion; (3) Plaintiff's Objections to the R&R; and (4) Defendant's Response.

Plaintiff alleged that Defendants violated the "Due Process Clause of the Fifth Amendment" and the case was assigned to this Court by "random lot" — although not arbitrarily[1] — as Article III Courts have jurisdiction over all "cases" *or* "controversies" "arising under the Constitution".[2]

---

[1] *See* Doc. 31 (acknowledging the Right to the "impartiality" of an Article III adjudicator); s*ee also*, *Franklin v. Joseph*, 15–002, Vol. I at pg. 27 (September 17, 2015) (finding "the right of all persons to be free from tyranny is a Privilege and Immunity of Citizenship [and that Right] includes protection from arbitrary decisions & processes by government") (citing William Blackstone, *Commentaries on the Laws of England*, Book I, Ch. I: OF THE ABSOLUTE RIGHTS OF INDIVIDUALS, pgs. 117-141 (1765)); *see further*, *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 813 (2010) (Thomas, J., concurring) (finding "the terms 'privileges' and 'immunities' had an established meaning as synonyms for 'rights' " as used in the Constitution) (also citing W. Blackstone, *Commentaries on the Laws of England*).

[2] U.S. Con. Art. III § 2 (expounding the constitutional extent of Article III judicial Power).

But, Defendants claim, and the Magistrate Judge agrees, this Court lacks jurisdiction to adjudicate this matter beyond determining its own jurisdiction.[3]

Defendants argue that the Court cannot engage in "judicial review" of this case because it involves reviewing a prosecutor's decision to send a "*Giglio* letter" to a federal executive agency about an agent of the executive — and *absolute immunity* applies.[4]

The Magistrate Judge's R&R also invoked the "separation of powers doctrine" and found "judicial review of the [prosecutor's] decisionmaking process [] inappropriate in this case."[5]

Whether this Court possesses the Power of Judicial Review is beyond "judicial review" in this matter.[6] And *absolute prosecutorial immunity* from Judicial Review applies to decisions whether or not to prosecute.[7]

Here, the prosecutor sent the *Giglio* letter after it received a prosecution referral from the agency.[8] The prosecutor declined to prosecute, and issued the letter detailing its rationale for that decision and stating its intentions to "no longer [use] Plaintiff 'as a government witness in any criminal prosecution.' "[9]

---

[3] *See Brinkman v. Ryan*, 14-CV-2093 (D. Ariz., December 2, 2016) (holding a "U.S. Federal District Court possesses the jurisdiction to inquire into its own jurisdiction — a threshold question that must be addressed before proceeding to the merits of any argument").

[4] *See* Doc. 16 at pg. 6 (invoking the doctrines of "separation of powers" and "absolute immunity").

[5] Doc. 28 at pg. 12 (finding that "judicial review of the USAO's decisionmaking process to issue a Giglio letter is inappropriate in this case").

[6] *See, e.g.*, *Washington v. Trump*, 17-35105, at pg. 18 (9th Cir. February 9, 2017) (finding "it is beyond question that the federal judiciary retains the authority to adjudicate constitutional challenges to executive action"); *see also*, *The Law of Judicial Precedent*, at pg. 173 (2016) (stating "*Marbury v. Madison* is the quintessential leading case because it settled beyond doubt a then-uncertain but extremely important question: whether courts may subject legislative and executive actions to judicial review for their constitutionality").

[7] *Roe v. City & Cty. of San Francisco*, 109 F.3d 578, 584 (9th Cir. 1997) ("hold[ing] that absolute immunity exists against damage suits against individual prosecutors under 42 U.S.C. § 1983 for decisions not to initiate prosecutions").

[8] Doc. 18 at pg. 4.

[9] *See id*.

Plaintiff was subsequently terminated from their position with the executive agency and alleges that Defendants deprived them of liberty and property, without due process of law, because Plaintiff's employment was terminated "based solely on" the "*Giglio* letter" and Plaintiff never received notice or a hearing to challenge the prosecutor's decision to issue the letter.[10]

But Plaintiff's claimed "liberty interest" — best construed as the Right to be free from arbitrary governmental action — was not violated by the Defendants as the *Giglio* letter provided a rationale for the prosecutor's decisions.[11]

And although Plaintiff may have legitimate "property interest" in continuing federal employment;[12] Defendants did not employ Plaintiff, nor did Defendants terminate Plaintiff's employment.[13]

Therefore, Plaintiff has not adequately alleged any deprivation of "liberty" or "property" proximately caused by Defendants[14] — whose actions merely constituted responding to an Article II agency's intrabranch communication and explaining their decision not to prosecute.[15]

---

[10] Doc. 29 at pg. 3-4 (stating Plaintiff "seeks judicial recognition of a constitutional protected liberty and property interest in the decision-making process that leads up to a [prosecutor's] *Giglio* determination" and argues that "[a]t a minimum, discovery should be permitted to determine [] policies, procedures, and guidelines as to how letters such as the one in this case are issued and whether they are, in fact, a discretionary prosecution function.").

[11] *See* Doc. 18 at pg. 4.

[12] *See Gilbert v. Homar*, 520 U.S. 924, 928 (1997) (Scalia, J.) (acknowledging the Supreme Court has "held that public employees who can be discharged only for cause have a constitutionally protected property interest"); *see also*, *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) (Stewart, J.) ("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source.").

[13] *See* Doc. 28 pgs. 6-7.

[14] *Koziara v. BNSF Ry. Co.*, 840 F.3d 873, 877 (7th Cir. 2016) (Posner, J.) ("Proximate causation in contrast creates legal liability, "proximate" denoting in law a relation that has legal significance.").

[15] Doc. 28 at pg. 7 (explaining that, in this matter, Plaintiff is only challenging the constitutionality of Defendants' actions and decisionmaking "in the space[time] before the decision to issue [the] *Giglio* letter"); *see also*, *Barnett v. Marquis*, 662 F. App'x 537, 540 (9th

Any judicial inquiry beyond this "limited judicial review" of the prosecutor's actions to ensure constitutional compliance lies beyond the Power of an Article III Court.[16]

Accordingly, IT IS ORDERED that the Magistrate's Report and Recommendation (Doc. 28) is ACCEPTED.[17]

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss (Doc. 21) is GRANTED.[18]

IT IS FURTHER ORDERED that the Clerk of the Court enter judgment and close this case.

Dated this 28th day of February, 2017.

                          Honorable Frank R. Zapata
                          Senior United States District Judge

---

Cir. 2016) (prosecutors "are entitled to absolute immunity for communicating to [an executive agency] their decisions not to use [Plaintiff] as a witness or work with [Plaintiff] on any ongoing investigations.").

[16] *See Dep't of Transp. v. Ass'n of Am. Railroads*, 135 S. Ct. 1225, 1246 (2015) (Thomas, J., concurring) ("The 'check' the judiciary provides to maintain our separation of powers is enforcement of the rule of law through judicial review."); *see also*, *Covington v. Harris*, 419 F.2d 617, 621 (D.C. Cir. 1969) ("The principal purpose of limited judicial review of administrative action is to insure that the decision-makers have (1) reached a reasoned [] decision, (2) by employing the proper criteria, and (3) without overlooking anything of substantial relevance.").

[17] *See* Doc. 29 (admitting that: "The Report accurately articulates the factual background in this case").

[18] *See*, *e.g.*, *Eagle Eye Produce v. Agricola Faaer*, 16-CV-103 (D. Ariz. September 1, 2016) ("expounding the *Twombly*/*Iqbal* standard for adjudicating Motions to Dismiss).